Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
20827 N. Cave Creek Road, Suite 101
Phoenix, AZ  85024

Telephone: (602) 482-4300
Facsimile:   (602) 569-9720

*Attorney for Plaintiff Lynn Kelly-Miller*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Lynn Kelly-Miller,<br><br>           Plaintiff,<br><br>      v.<br><br>Metropolitan Life Insurance Company, Wells Fargo & Company, Wells Fargo & Company Long Term Disability Plan,<br><br>           Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff, Lynn Kelly-Miller (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

***Jurisdiction***

1.  Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. Plaintiff is a resident of Maricopa County, Arizona.

3. Upon information and belief, Defendant Wells Fargo & Company (hereinafter referred to as the "Company") sponsored, subscribed to and administered a group disability insurance policy which was fully insured by Metropolitan Life Insurance Company (hereinafter referred to as "MetLife"). The specific MetLife policy is known as group policy 97963. The Company's purpose in subscribing to the MetLife policy was to provide disability insurance for its employees. Upon information and belief, the MetLife policy may have been included in and part of the Wells Fargo & Company Long Term Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4. Upon information and belief, MetLife functioned as the claims administrator of the Plan; however, pursuant to the relevant ERISA regulation, the Company or Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in MetLife.

5. Upon information and belief, Plaintiff believes MetLife operated under a structural conflict of interest in her claim due to the fact that it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of benefits; *to wit,* MetLife's conflict existed in that if it found Plaintiff was disabled it was also liable for payment of those benefits.

6. The Company, Plan, and MetLife conduct business within Maricopa County and all events giving rise to this Complaint occurred within Maricopa County.

### *Venue*

7. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### *Nature of the Complaint*

8. Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant policies and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant policies pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits she may be entitled to as a result of being found disabled.

9. After working for the Company as a loyal employee Plaintiff became disabled due to serious medical conditions and was unable to work in her designated occupation as a Processor Grade III on or about February 2, 2006. Plaintiff has remained disabled as that term is defined in the relevant MetLife policy continuously since that date and has not been able to return to any occupation as a result of her serious medical conditions.

10. Upon information and belief, the relevant MetLife policy provides the following definition of a covered disability and applies to Plaintiff's claim:

> 'Disabled' or 'Disability" means that, due to sickness, pregnancy or accidental injury, you are receiving Appropriate Care and Treatment from a Doctor on a continuing basis; and
>
> 1. during your Elimination Period and the next 24 month period, you are unable to earn more than 80% of your Predisability Earnings or Indexed Predisability Earnings at your Own Occupation for any employer in your Local Economy; or
>
> 2. After the 24 month period, you are unable to earn more than 60% of your Indexed Predisability Earnings from any employer in your Local

-3-

        Economy at any gainful occupation for which you are reasonably qualified taking into account your training, education, experience and Predisability Earnings.

11. Plaintiff applied for long term disability benefits, which were approved following a twenty-two (22) week elimination period, Plaintiff's long term disability benefits began as of July 6, 2006.

12. The relevant MetLife policy required Plaintiff to file for Social Security (SSA) disability benefits in order to continue to receive benefits from MetLife. Plaintiff filed for Social Security benefits on or about June 28, 2006.

13. Beginning with a letter dated August 23, 2006, MetLife notified Plaintiff in writing over ten (10) times she was required to file for SSA benefits and to notify MetLife of the status of her SSA disability claim.

14. Thereafter, as part of her ongoing MetLife long term disability claim, Plaintiff submitted to MetLife two (2) physician disability assessments prepared by one of her treating physicians dated August 7, 2007 and February 7, 2008 which indicated Plaintiff was unable to return to work. The physician completing the disability assessments further indicated Plaintiff's condition was not expected to improve in any area.

15. On January 10, 2008, MetLife notified Plaintiff the twenty-four (24) month "own occupation" disability period would end on July 5, 2008. Upon information and belief, MetLife at that time began investigating whether Plaintiff met the definition of disability in the policy for being unable to engage in "any gainful occupation" for which she had training, education or experience.

16. As part of its evaluation, MetLife referred Plaintiff's claim to a third party vendor known as Medical Consultants Network, Inc. ("MCN") to obtain a medical review

-4-

of Plaintiff's claim by a physician retained by MCN.  According to its website,[1] MCN is in the business of providing claim review services to the disability insurance industry:

> Short and Long Term Disability
>
> Medical Consultants Network, Inc. (MCN) provides claims management services nationwide for insurance professionals, self-insured organizations, state-funds, workers' compensation programs and attorneys.  For over 20 years, MCN has been an industry leader in providing disability evaluation services and file management solutions…

17. Upon information and belief, due to its extensive business relationship with the disability insurance industry, Plaintiff believes the involvement of MCN in the review of her claim presents a conflict of interest and is a reason her claim was denied and why she did not receive a full and fair review pursuant to ERISA, 29 U.S.C. § 2560.503-1.

18. Due to the nature of MCN's relationship with the disability insurance industry and MetLife, Plaintiff questions the objectivity and impartiality of MetLife, MCN and any individual retained by MetLife and/or MCN to review her claim and provide a full and fair review.

19. In evaluating Plaintiff's claim for long term disability benefits, MetLife relied on a medical review report authored by MCN contracting physician Dan Gerstenblitt, M.D.[2]  MCN, Dr. Gerstenblitt and MetLife's conflicts of interest are evident in the April 10, 2008

---

[1] www.mcn.com.

[2] Upon information belief, Dr. Gerstenblitt serves on the Reed Group, Ltd.'s Medical Advisory Board (*See* http://www.reedgroup.com/about-us/medical-advisory-board.htm).

Reed Group, Ltd. is a company which provides third party administration, absence management and disability review services for the disability insurance industry (*See* http://www.reedgroup.com/about-us/overview.htm).

Reed Group's founder, Pressley Reed, M.D. has made public comments which Plaintiff believes raises questions regarding the independence and objectivity Dr. Reed and his company may have with regard to evaluating individual's claims who are disabled and unable to work.  Dr. Gerstenblitt's relationship with the disability industry in general and specifically, his serving on the Reed Group, Ltd. Medical Advisory Board raises

Peer Review report he authored. Without examining Plaintiff, and in direct disregard of a conversation with Plaintiff's treating physician who opined "she could not imagine the patient returning to work," Dr. Gerstenblitt, *inter alia*, relied on a 2005 Peer Review report which found Plaintiff was not precluded from working in a sedentary job and opined Plaintiff could work full-time in a sedentary job. In his report, Dr. Gerstenblitt unlawfully and erroneously ignored or de-emphasized the nature of Plaintiff's progressive medical condition and her physicians' findings, opinions as well as her self-reported complaints and the combined impact [3] Plaintiff's prescribed medications had on her ability to work in any occupation. Plaintiff believes this evidence was critical because the aforementioned limitations precluded any gainful employment and were sufficient to meet any definition of disability in the MetLife policy. The aforementioned evidence should have been considered and the fact it was not precluded a lawful, full and fair review.

20. Upon information and belief, including a cursory review of the Lexis legal database, [4] Plaintiff believes Dr. Gerstenblitt's biased opinions are the product of his relationship with MCN and the medical review industry in general wherein he may be repeatedly retained by MCN [5] or other similar insurance industry related entities to perform

---

questions regarding his independence and objectivity in the evaluation of Plaintiff's claim (*See* Exhibit "A" to this Complaint).

[3] *See Peterson v. Fed. Express Corp. Long Term Disability Plan*, 2007 U.S. Dist. LEXIS 41590 (D. Ariz. 2007).

[4] *See Meyer v. Life Ins. Co. of N. America*, 2009 U.S. Dist. LEXIS 8586 (E.D. Ky.); and, *Wuollet v. Short Term Disability Plan of RSKCo.*, 380 F.Supp. 2d 994 (D. Minn. 05).

[5] Nor do we question the Court of Appeals' concern that physicians repeatedly retained by benefits plans may have an "incentive to make a finding of 'not disabled' in order to save their employers money and to preserve their own consulting arrangements." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833 (U.S. 2003).

the type of services he provided in Plaintiff's claim.  Plaintiff believes Dr. Gerstenblitt's conflicts of interest are apparent in that he may have an incentive to protect his own consulting relationships with the aforementioned industry by providing medical review reports which selectively review or ignore evidence, such as occurred in Plaintiff's claim, in order to provide report(s) which are favorable to insurance companies such as MetLife and which supported the denial of Plaintiff's claim.  Plaintiff believes Dr. Gerstenblitt's conflict of interest led to his biased review and MetLife's conflict of interest led it to rely on Dr. Gerstenblitt's report to deny Plaintiff's claim.

21.     In response to the Peer Review report authored by Dr. Gerstenblitt, Plaintiff submitted to MetLife an April 26, 2008 narrative letter from the same treating physician who personally spoke with Dr. Gerstenblitt during his review.  The physician "completely disagreed" with Dr. Gerstenblitt's conclusion Plaintiff could work in a sedentary position. Plaintiff's physician explained her "p]ain is not a static condition" and the "pain has progressed over the months…and [she] is not able to return to a full time sedentary job." This physician further explained Plaintiff's pain had been documented by numerous reports and there was a "progression of [] degenerative changes…"  The physician concluded Plaintiff "is unable to return to any job and will likely not be able to in the future."

22.     Dr. Gerstenblitt prepared a May 11, 2008 Addendum to his April 10, 2008 report responding to the April 26, 2008 narrative letter from Plaintiff's treating physicians. The Addendum again completely disregarded Plaintiff's treating physician's statements and opinions.  Without examining Plaintiff, Dr. Gerstenblitt's opinion was she needed to merely discontinue all her pain medications and mentally decide to work through her pain and this would allow a return to work in any sedentary position.

23. In evaluating Plaintiff's claim for long term disability benefits, MetLife also relied on an Employability Assessment dated June 12, 2008 prepared by Kristal Abu-Thredeh, MS, CRC, which identified three specific job positions MetLife believed Plaintiff was capable of performing.

24. In a letter dated June 16, 2008, MetLife notified Plaintiff it was terminating her long term disability benefits effective July 7, 2008. In the denial letter, MetLife failed to provide a full and fair review pursuant to ERISA because it completely failed to reference or consider, or selectively reviewed most, if not all of the evidence submitted by Plaintiff, which adequately documented her continued serious medical conditions and supported the fact that her medical conditions had continued to deteriorate and that she continued to meet the definition of disability set out in the relevant policy.

25. In terminating Plaintiff's long term disability benefits, MetLife denied Plaintiff a lawful, full and fair review pursuant to ERISA for various reasons including but not limited to, failing to consider that Plaintiff's condition had not improved, failing to consider all evidence submitted by Plaintiff, failing to consider all the limitations set forth in her medical evidence, failing to fully evaluate all of Plaintiff's serious medical conditions, ignoring Plaintiff's self-reported complaints, failing to consider the combined effects of Plaintiff's serious medical conditions, failing to consider the combined side effects of Plaintiff's multiple medications, relying on medical opinions based on outdated Peer Review reports, failing to acknowledge the progressive nature of Plaintiff's serious medical conditions and failing to request Plaintiff undergo an independent medical evaluation as provided for in the relevant policy.

26. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the July 16, 2008 denial of her claim in a letter dated December 15, 2008 and submitted additional medical records to MetLife.

27. In support of her appeal, Plaintiff submitted to MetLife a February 8, 2008 and December 15, 2008 Medical Assessment of Ability to Do Work-Related Physical Activities form completed by one of her treating physicians. This physician opined that Plaintiff was unable to work an eight (8) hour day, five (5) days a week on a regular and consistent basis. Plaintiff further submitted a February 21, 2007 and June 6, 2008 Medical Assessment of Ability to Do Work-Related Activities form from another treating physician who also opined Plaintiff was unable to work an eight (8) hour day, five (5) days a week on a regular and consistent basis.

28. In a letter dated February 2, 2009, after appearing at a hearing before an SSA Administrative Law Judge, the judge and SSA found Plaintiff was disabled from engaging in any gainful occupation which may exist in the national economy as of June 28, 2006. SSA's definition of disability is similar to the aforementioned definitions of disability set forth in the relevant MetLife policy; therefore, the judge's decision approving Plaintiff's claim is relevant evidence [6] for this Court to consider with regard to the lawfulness of MetLife's decision to terminate her benefits and its obvious conflict of interest

29. On appeal, MetLife obtained an alleged independent Physician Consultant Review by Neil McPhee M.D. Upon information and belief, based upon a cursory search of

---

[6] In *Metro. Life Ins. Co. v. Glenn,* 128 S. Ct. 2343, 2352 (U.S. 2008), "the court found questionable the fact that MetLife had encouraged Glenn to argue to the Social Security Administration that she could do no work, received the bulk of the benefits of her success in doing so (the remainder going to the lawyers it recommended), and then ignored the agency's finding in concluding that Glenn could in fact do sedentary work."

the LEXIS legal database,[7] Plaintiff believes Dr. McPhee may be frequently retained to perform medical review services for the disability insurance industry. Plaintiff incorporates by reference, and re-alleges that Dr. McPhee's had the same incentive to protect his own consulting relationship with the medical review industry as did Dr. Gernstenblitt and Dr. McPhee's opinion was biased and violated ERISA for the same reasons as set forth herein for Dr. Gernstenblitt.

30. MetLife and Dr. McPhee's conflicts of interest are evident in the April 23, 2009, Physician Consultant Review report he authored which opined Plaintiff was able to work a sedentary position. Dr. McPhee did not examine Plaintiff and his opinion Plaintiff's medical evidence did not support a finding of Plaintiff's inability to work in any occupation was based entirely on a selective review of Plaintiff's medical records, a selective review of her treating medical professionals' opinions that she was unable to engage in any gainful employment and de-emphasized evidence submitted by Plaintiff which proved she was disabled in order to justify a denial of her claim. Plaintiff incorporates by reference, and re-alleges her belief that Dr. McPhee violated ERISA by committing the same errors and omissions as did Dr. Gernstenblitt.

31. MetLife obtained two additional medical review reports from a third party vender, Elite Physicians, Ltd., a subsidiary of Network Medical Review ("Elite Physicians"). According to its website, [8] Elite Physicians is in the business of providing claim review services to the disability insurance industry:

> [Network Medical Review] is an Independent Review Organization that specializes in Evidence-Based Medical Solutions for the insurance, managed care, legal and medical industries…
>
> \*   \*   \*

---

[7] *See Garza v. Astrue*, 2009 U.S. Dist. LEXIS 23973 (D. Ariz. 2009).
[8] www.nmrco.com.

Elite Physicians, Ltd. is a company that provides evidence-based medical assessments.

32. Upon information and belief, due to its extensive business relationship with the disability insurance industry, Plaintiff believes the involvement of Elite Physicians in the review of her claim presents a conflict of interest and is a reason her claim was denied and why she did not receive a full and fair review pursuant to ERISA, 29 U.S.C. § 2560.503-1.

33. Due to the nature of Elite Physicians' relationship with the disability insurance industry and MetLife, Plaintiff questions the objectivity and impartiality of MetLife, Elite Physicians and any individual retained by MetLife and/or Elite Physicians to review her claim and provide a full and fair review.

34. In evaluating Plaintiff's claim for long term disability benefits, MetLife relied on medical review reports authored by Elite Physicians contracting physicians Dr. Tanya C. Lumpkins, M.D. and Dr. Reginald A. Givens. Dr. Lumpkins prepared a medical review report dated May 4, 2009. Dr. Givens prepared medical review reports dated May 4, 2009 and June 1, 2009. Elite Physicians, Dr. Lumpkins, Dr. Givens and MetLife's conflict of interest are evident in the medical review report authored by Drs. Lumpkins and Givens.

35. Upon information and belief, based upon a cursory search of the LEXIS legal database,[9] Plaintiff believes Drs. Lumpkins [10] and Givens' [11] may be frequently retained to perform medical review services for the disability insurance industry. Plaintiff incorporates by reference, and re-alleges that Drs. Lumpkins and Givens had the same incentive to protect their own consulting relationship with the medical review industry as did Drs.

---

[9] *See Garza v. Astrue*, 2009 U.S. Dist. LEXIS 23973 (D. Ariz. 2009).

[10] *See Chadwick v. Metropolitan Life Ins. Co.*, 498 F.Supp.2d 1309; and, *Ondersma v. Metropolitan Life Ins. Co.*, 2007 U.D. Dist LEXIS 91299 (N.D. Cal.).

[11] *See Kruk v. Metropolitan Life Ins. Co.*, 2009 U.S. Dist. LEXIS 46454 (D. Conn.); and, *Harden v. Metropolitan Life. Ins. Co.*, 2007 U.D. Dist. LEXIS 73262 (E.D. Ark.).

-11-

Gernstenblitt and McPhee and their opinions were biased violating ERISA for the same reasons as set forth herein for Drs. Gernstenblitt and McPhee.

36. Drs. Lumpkins and Givens did not examine Plaintiff and their opinions that Plaintiff's medical evidence does not support a finding of Plaintiff's inability to work in any occupation was based entirely on a selective review of Plaintiff's medical records, a selective review of her treating medical professionals' opinions that she was unable to engage in any gainful employment and de-emphasized evidence submitted by Plaintiff which proved she was disabled in order to justify a denial of her claim. Plaintiff incorporates by reference, and re-alleges her belief that Drs. Lumpkins and Givens violated ERISA by committing the same errors and omissions in their review of Plaintiff's claim as did Drs. Gernstenblitt and McPhee.

37. In her May 4, 2009 report, Dr. Lumpkins not only committed the same errors and omission as did Drs. Gernstenblitt, McPhee and Givens, she also tacked on a new reason to deny Plaintiff's claim. Dr. Lumpkins based her opinion Plaintiff was not disabled on the fact she was the primary caretaker for herself and family.

38. In his June 1, 2009 Addendum report, Dr. Givens acknowledged the records did support Plaintiff's inability to work July 6, 2009 through September 25, 2008.

39. In a letter dated July 22, 2009, MetLife notified Plaintiff it found she did not meet the definition of disability and it was upholding the denial of her claim after September 25, 2008. In upholding its denial of Plaintiff's claim, MetLife relied on a May 4, 2009 report prepared by Dr. Lumpkins, which as referenced *supra*, tacked on a new reason to deny Plaintiff's claim and in the process violated ERISA.[12]  MetLife's July 23, 2009

---

[12] "'An administrator must provide a plan participant with adequate notice of the reasons for denial, 29 U.S.C. § 1133(1), and must provide a "full and fair review" of the participant's claim, *id.* § 1133(2); *see also* 29 C.F.R. § 2560.503-1(g)(1), (h)(2)...*When an*

-12-

denial letter further indicated it relied on three of its own employees in rendering its decision - an alleged "Nurse Consultant," "Psychiatric Consultant Specialist" and a "Vocational Rehabilitation Consultant." Plaintiff questions the credentials, independence, impartiality and bias of MetLife's own employees in reviewing her claim and/or in rendering opinions regarding the job duties she is able to perform.  Plaintiff believes the alleged Nurse Consultant, Psychiatric Consultant Specialist and Vocational Rehabilitation Consultant's opinions are adversarial to her claim due to a conflict of interest as a result of allegedly being MetLife's employee.  Plaintiff believes MetLife's structural financial conflict of interest was a motivating factor it denied her claim and why it failed to properly consider or give weight to the SSA's judge's determination she was disabled from engaging in any occupation.

40.    In its March 20, 2009 denial letter, MetLife denied Plaintiff of a full and fair review for a plethora of reasons, including but not limited to failing to give proper weight to SSA judge's determination she was disabled, failing to consider the combined effect of all of Plaintiff's serious medical conditions on her ability to work at any occupation; failing to consider the side effects of her various medications had on her ability to work in any occupation; ignoring and/or de-emphasizing Plaintiff's evidence including her self-reported limitations; ignoring and/or de-emphasizing consistent and repeated reliable medical reports by Plaintiff's various treating physicians she could not function sufficiently in any occupation and was totally disabled with little chance of improvement as her condition was

---

*administrator tacks on a new reason for denying benefits in a final decision, thereby precluding the plan participant from responding to that rationale for denial at the administrative level, the administrator violates ERISA's procedures.'" Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.2d 863, 871 (9th Cir. 2008)(citation omitted)(emphasis added).

progressive; failing to obtain an independent medical examination to assess the combination of Plaintiff's medical conditions given the fact the relevant policies allowed for such evaluation and the clear indication that Plaintiff suffered from various severe medical conditions; consistently accepting self-serving evidence obtained by MetLife which suggested Plaintiff was not disabled while simultaneously ignoring and/or rejecting reliable evidence which proved she was unable to work in any occupation and was entitled to continued benefits.

41. In evaluating Plaintiff's claim on appeal, MetLife had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in her best interests and other participants" which it failed to do.[13]

42. Plaintiff believes the reason MetLife provided an unlawful review which was neither full or fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to the aforementioned dual roles it undertook as decision maker and payor of benefits in her claims which created an inherent conflict of interest and this conflict is the reason her disability claim and waiver of life insurance premium claims were denied.

43. Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of MetLife any individual who reviewed her claim and the Court may properly

---

[13] "It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

weigh and consider evidence regarding the nature, extent and effect of *any* conflict of interest which may have impacted or influenced MetLife's decision to deny her claim.

44. MetLife has informed Plaintiff she has exhausted her administrative remedies.

45. With regard to whether Plaintiff meets the definition of disability set forth in the MetLife policy, the Court should review the evidence *de novo,* because even if the Court concludes the relevant policy confers discretion, the unlawful violations of ERISA committed by MetLife as referenced herein are so flagrant they justify *de novo* review.

46. As a direct result of MetLife decision to deny Plaintiff's disability claim, she has been injured and suffered damages in the form of lost disability benefits in addition to other potential employee benefits she may have been entitled to receive through or from the Plan and/or Company as a result of being found disabled.

47. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

48. Plaintiff is entitled to prejudgment interest at the rate of 10% per annum pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for losses she incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For and Order requiring Defendants to pay Plaintiff disability benefits and any other benefits, including potentially a waiver on her life insurance premium, she may be entitled to as a result of being found disabled pursuant to the relevant policies from the date she was first denied these benefits through the date of judgment and prejudgment interest thereon as well as any other employee benefits she may be entitled to from the Plan and/or Company as a result of being found disabled;

  B. For an order directing Defendants to continue paying Plaintiff the aforementioned benefits until such time she meets the conditions for termination of benefits;

  C. For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

  D. For such other and further relief as the Court deems just and proper.

DATED this 18th of February, 2010.

S<small>COTT</small> E. D<small>AVIS</small>. P.C.

By: */s/ Scott E. Davis*
   Scott E. Davis
   Attorney for Plaintiff